916 So.2d 1106 (2005)
Nancy Davis JUDSON, Secretary/Treasurer Hall's Mortuary, Inc.
v.
Hall DAVIS, IV, President Hall's Mortuary, Inc.
No. 2004 CA 1699.
Court of Appeal of Louisiana, First Circuit.
June 29, 2005.
*1109 Alfreda Tillman Bester, Robert Eames, Baton Rouge, Counsel for Plaintiff/Appellant Nancy David Judson.
Henry D.H. Olinde, Jr., Baton Rouge, Edward A. Songy, Jr., Plaquemine, Counsel for Defendant/Appellee Hall Davis, IV.
David B. Allgood, Baton Rouge, Counsel for Temporary Liquidator Edward J. Merrick, Jr.
Before: GUIDRY, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
This is an appeal of a summary judgment ordering the involuntary dissolution of a close corporation. The two opposing parties are the sole directors, officers, and shareholders, with equal ownership interests. For the following reasons, we affirm the judgment.

FACTS AND PROCEDURAL BACKGROUND
The parties in this appeal are siblings, and, unfortunately, rivals as well. They inherited their parents' stock in a domestic close corporation, Port Allen Mortuary, Inc., as well as the immovable property upon which the corporate business, a funeral home, was situated. They subsequently exchanged the property with the corporation for additional stock, and changed the corporate name to Hall's Mortuary, Inc. The plaintiff-appellant, Nancy Davis Judson, was the secretary-treasurer of Hall's Mortuary, Inc., and also a director *1110 and shareholder of fifty percent of the outstanding stock issued. The defendant-appellee, Hall Davis, IV, was the president, a director, and the shareholder of the other fifty percent of the corporation's stock. The primary business of the corporation is the operation of a prominent and successful funeral home in Port Allen, Louisiana.
The tortuous trail of this litigation commenced on September 16, 2002, when Ms. Judson filed a petition for a writ of mandamus in the 18th Judicial District Court for the Parish of West Baton Rouge, seeking to compel Mr. Davis to hold formal corporate meetings, to comply with the corporate bylaws, and to allow her access to all corporate records. Pursuant to La. C.C.P. art. 3865, the trial court issued an alternate writ on September 23, 2002, ordering Mr. Davis to either perform the acts demanded, or to show cause to the contrary on October 18, 2002. On October 8, 2002, Mr. Davis filed his answer to the petition, denying Ms. Judson's allegations of mismanagement and ultra vires acts on his part, and affirmatively alleging that Ms. Judson had conducted unilateral action on behalf of the corporation and failed to properly record certain financial transactions. The scheduled hearing on the alternate writ of mandamus was continued without date at the request of both parties, as they attempted to amicably resolve their differences.
On January 8, 2003, Mr. Davis filed a reconventional demand styled as a "Petition for Involuntary Dissolution of Corporation" in the action instituted by Ms. Judson, and requested service on Ms. Judson only. He alleged that he and Ms. Judson were "deadlocked in the management of the corporate affairs" and that the corporation should be dissolved and liquidated, with a liquidator appointed by the trial court. The foregoing pleading was accompanied by an ex parte motion to appoint a temporary liquidator, in which Mr. Davis nominated a local accountant, Bobby E. Stanley, to serve in that capacity. On the same date, the trial court signed an order permitting the filing of Mr. Davis's "petition" and appointing Mr. Stanley as temporary liquidator.[1]
On January 13, 2003, Ms. Judson filed a motion to re-set the hearing on the alternate writ of mandamus, and an order was signed that day, setting the hearing for March 21, 2003.
On January 17, 2003, Ms. Judson filed and served a dilatory exception to Mr. Davis's reconventional demand, asserting the objections of improper cumulation of actions and the reconventional demand's nonconformity with the requirements of La. R.S. 12:143(C). The dilatory exception was originally fixed for hearing on March 21, 2003, but on January 23, 2003, on Ms. Judson's motion, the trial court advanced the hearing on the alternate writ and the hearing on the exception to February 14, 2003. In the same motion, Ms. Judson prayed that the appointment of the temporary liquidator be "stayed" pending the hearing, but the trial court refused to issue an order to that effect.
On January 23, 2003, Mr. Davis submitted an ex parte motion for separate trials of the mandamus action and his reconventional demand, on the grounds that such action would resolve the objection of improper cumulation raised by Ms. Judson. The trial court granted that motion the same day, and ordered separate trials, and *1111 dismissed the dilatory exception of improper cumulation as moot.
On January 27, 2003, Ms. Judson moved for an order of appeal of the trial court's interlocutory orders of January 23, 2003, denying her request to "stay" the temporary liquidator's appointment and granting Mr. Davis's motion ordering separate trials of the mandamus and corporate dissolution actions. On the same date, Ms. Judson filed a motion to recuse the trial judge on the grounds of bias in favor of Mr. Davis and his counsel. The latter motion was set for hearing at the request of Mr. Davis on February 20, 2003. Following that hearing, another trial judge ruled that the motion would be denied. A judgment to that effect was signed on March 11, 2003.
Following the hearing on the motion to recuse and the oral ruling denying it, the original trial judge signed an order on February 21, 2003, granting Ms. Judson an appeal of the interlocutory orders of January 23, 2003.
On March 17, 2003, Ms. Judson filed a "request" in this court, seeking "injunctive relief" and an express order divesting the trial court of jurisdiction by reason of the pending appeal of the interlocutory judgments. This court treated the "request" as a writ application, and refused to consider that writ application because of numerous violations of the appellate court rules governing the form and content of such applications. Judson v. Davis, 2003 CW 0467 (La.App. 1st Cir.3/18/03) [unpublished opinion]. On March 20, 2003, Ms. Judson submitted her writ application on the issue of the trial court's jurisdiction in proper form. On the same date, this court denied that writ application, stating that the trial court was not divested of jurisdiction. Judson v. Davis, 2003 CA 0505 (La. App. 1st Cir.3/20/03) [unpublished opinion].
After the appeal record for the appeal of the January 23, 2003 orders was lodged, this court issued an order on June 2, 2003, for the parties to show cause why the appeal should not be dismissed for lack of jurisdiction, as an appeal of interlocutory orders rather than final judgments. On July 15, 2003, this court dismissed the appeal of the judgment dismissing the dilatory exception as an interlocutory non-appealable judgment, but granted Ms. Judson thirty days within which to apply for supervisory writs. Judson v. Davis, 2003 CW 0970 (La.App. 1st Cir.7/15/03) [unpublished opinion]. Ms. Judson thereupon sought supervisory writs, which were denied with reasons. Judson v. Davis, 2003 CA 1811 (La.App. 1st Cir.9/18/03) [unpublished opinion].[2] Her writ applications to the Louisiana Supreme Court, seeking review of this court's above ruling on the issue, were likewise denied. Judson v. Davis, 03-2771 (La.10/15/03), 858 So.2d 407; Judson v. Davis, 03-2896 (La.12/9/03), 860 So.2d 1142.
In the course of a status conference held on May 1, 2003, the trial court directed Mr. Davis to serve the corporation with the reconventional demand seeking dissolution, in order to comply with La. R.S. 12:143(C). In addition to serving the corporation, Mr. Davis again served Ms. Judson with the original reconventional demand. On September 11, 2003, Ms. Judson filed two separate dilatory exceptions of unauthorized use of summary proceeding and a peremptory exception of no right of action.
On September 19, 2003, the trial court conducted a hearing on Ms. Judson's new exceptions and motions of the temporary liquidator seeking court approval for certain *1112 actions. The exceptions were overruled and the temporary liquidator's motions were granted.
On September 26, 2003, Ms. Judson filed her answer to the reconventional demand, incorporating a motion for trial by jury.
On November 3, 2003, Ms. Judson served Mr. Davis, through his counsel, with discovery interrogatories. On November 17, 2003, Mr. Davis filed a motion for summary judgment in his reconventional demand seeking dissolution. On November 18, 2003, Ms. Judson served a request for production of documents on Mr. Davis, through his counsel. On January 7, 2004, Ms. Judson filed a motion to compel discovery responses.
The motion for summary judgment and the motion to compel were both assigned for hearing on April 23, 2004. Following the hearing, the motion for summary judgment was granted, and the judgment was signed the same day, ordering the involuntary dissolution of the corporation and appointing the temporary liquidator as judicial liquidator. The motion to compel was denied, on the grounds that it failed to comply with the mandatory provisions of Rule 10.1 of the Rules for Louisiana District Courts. This appeal followed.

ASSIGNMENTS OF ERROR
We summarize Ms. Judson's stated assignments of error as follows, in the order presented in her brief:
1. The trial court erred in rendering summary judgment, as there existed genuine issues of material fact unresolved by the judgment;
2. The trial court erred in rendering summary judgment, as adequate discovery had not been accomplished, there being outstanding discovery requests to the defendant;
3. The trial court erred in rendering summary judgment on the reconventional demand for dissolution in an ordinary proceeding, without first determining the issues in the mandamus action, a summary proceeding;
4. The trial court erred in denying Ms. Judson's motion to compel discovery responses;
5. The trial court erred in rendering judgment on September 19, 2003, on the temporary liquidator's motion, and in denying Ms. Judson's peremptory exception of no right of action;
6. The trial court erred in appointing a "special master" in the action for dissolution, without the consent of all parties;
7. The trial court erred in rendering summary judgment, thereby denying Ms. Judson due process and equal protection of the law, (a) by exhibiting clear and overt bias in favor of Mr. Davis and his counsel; (b) by depriving Ms. Judson of the right to trial by jury when genuine issues of material fact existed; and (c) while divested of jurisdiction by reason of a pending appeal.

DISCUSSION

Preliminary Procedural Issues
The voluminous and convoluted state of the record demonstrates that Ms. Judson has repeatedly sought relief from various rulings of the trial court. By means of this appeal, she not only seeks review of the summary judgment ordering dissolution, but also review of other interlocutory judgments and orders, some of which have been the subjects of prior attempted appeals and supervisory writ applications. When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. Landry v. Leonard J. Chabert *1113 Medical Center, 02-1559, p. 5 n. 4 (La.App. 1st Cir.5/14/03), 858 So.2d 454, 461 n. 4, writ denied, 03-1748 (La.10/17/03), 855 So.2d 761. It must be understood, however, that this general principle is subject to exceptions where the adverse interlocutory judgment has previously been appealed as an interlocutory judgment causing irreparable harm, or where the aggrieved party has sought supervisory writs and the appellate court makes a ruling which constitutes the "law of the case."
We decline to consider (or to reconsider) those issues as to which prior rulings of this court constitute the "law of the case" and those issues which are not directly involved in the judgment actually appealed and not set forth in the assignments of error.[3] However, we will consider Ms. Judson's assignments of error related to other interlocutory rulings directly related to the final judgment granting the petition of dissolution. Finally, we deny Ms. Judson's motion for leave to file exhibits in the record, noting that the record in fact contains the offered exhibits.

Summary Judgment
The summary judgment procedure is expressly favored in the law, and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La. C.C.P. art. 966(A). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). The mover has the burden of proof that he is entitled to summary judgment. If the mover would also bear the burden of proof at trial on the matter at issue, he must negate all essential elements of the adverse party's claim, action, or defense. See La. C.C.P. art. 966(C)(2). Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.

Standard of Review
This matter comes to us on appeal from a summary judgment. It is therefore subject to de novo review as to whether summary judgment was appropriate. Motorola, Inc. v. Associated Indemnity Corporation, 02-0716, p. 5 (La.App. 1st Cir.6/25/04), 878 So.2d 824, 828, writs denied, 04-2314, 04-2323, 04-2326, 04-2327 (La.11/19/04), 888 So.2d 207, 211, 212. As to the interlocutory judgments also appealed, they are subject to review under the "manifest error" or "clearly wrong" standard.
We now proceed to address each of Ms. Judson's assignments of error. We do so in an order more convenient to our initial determination of the related interlocutory judgments and preliminary procedural objections to summary judgment, before undertaking our de novo review of the merits of the summary judgment.

Third Assignment of Error: Improper Cumulation of Actions Precluding Summary Judgment
Despite this court's prior denial of her writ application, Ms. Judson again insists *1114 upon improper cumulation as being the appropriate objection to Mr. Davis's reconventional demand. We will again address this issue, but only to the extent it bears upon the summary judgment actually at issue in this appeal. Ms. Judson now urges that the pendency of her initially-filed mandamus action, a summary proceeding, procedurally bars the rendition of summary judgment in a reconventional demand seeking corporate dissolution, an ordinary proceeding.
It is true, as urged by Ms. Judson, that the mode of procedure for an action seeking dissolution of a corporation and appointment of a liquidator is an ordinary proceeding, rather than a summary proceeding. Bunn v. O.L. Bunn, Inc., 341 So.2d 629, 631 (La.App. 4th Cir.1977). Thus, it was procedurally improper to assert an action for corporate dissolution in a reconventional demand to a mandamus action. La. C.C.P. art. 1036(B). See also Foreman v. Hines, 314 So.2d 460, 463-64 (La.App. 4th Cir.1975). But the proper objection to raise by dilatory exception to the reconventional demand would have been that of unauthorized use of summary proceeding under La. C.C.P. art. 926(A)(3). Clement v. McNabb, 580 So.2d 981, 983 (La.App. 1st Cir.1991).[4]
It is well settled that the nature of an exception should be determined by its substance and not by its caption. Vicedomini v. Pelts & Skins, 01-2268, p. 2 (La.App. 1st Cir.2/15/02), 808 So.2d 867, 869. Arguably, this court could treat the objection as one of unauthorized use of summary proceeding, if it expressed an objection to the attempted use of summary proceedings to determine if dissolution or the appointment of a liquidator should be ordered. However, the essence of Ms. Judson's objection to the reconventional demand is not that Mr. Davis has attempted to improperly use summary proceeding to determine his action seeking corporate dissolution, but that the mandamus action was improperly "cumulated" with Mr. Davis's action, thereby somehow subjecting her mandamus action to ordinary proceeding. Additionally, as Ms. Judson's counsel has throughout these proceedings (including this appeal) stoically persisted in her quixotic quest to prove that improper cumulation is the proper basis of her client's exception, even after this court's writ opinion rejecting such argument, we choose to honor her choice of designation. See, e.g., Belser v. St. Paul Fire & Marine Insurance Company, 542 So.2d 163, 167-68 (La.App. 1st Cir.1989). We will also, however, honor our prior writ opinion as the "law of the case" and this court's holding in Johnston v. Bickham, 559 So.2d 15 (La.App. 1st Cir.1990), cited therein.[5]
*1115 In summary, there was no improper cumulation within the meaning of La. C.C.P. art. 461, the trial court did not err in denying the dilatory exception asserting that objection, and Ms. Judson's failure to raise the objection of unauthorized use of summary proceeding in the exception operates as a waiver of that objection. La. C.C.P. art. 926(B).
Despite the waiver of the procedural objection, Ms. Judson arguably states a separate but related assignment of error, to the effect that the pendency of her mandamus action precludes consideration of the merits of the action seeking dissolution, as the former summary proceeding takes precedence over the latter ordinary proceeding. In doing so, however, she cites no authority for that proposition other than that relating to cumulation of actions.
Louisiana Revised Statutes 12:141(B)(2) expressly provides that "[a] proceeding for dissolution takes effect ... [w]hen the court has appointed, pursuant to ... [La. R.S. 12:]143(E), ... a temporary liquidator, if the proceeding, when commenced, is subject to the supervision of the court." Mr. Davis's reconventional demand was commenced as an action seeking involuntary corporate dissolution, and thus court supervision was mandatory. La. R.S. 12:141(A). Upon the appointment of the temporary liquidator, the action seeking dissolution became a "proceeding for dissolution." Bunn, 341 So.2d at 631. Louisiana Revised Statutes 12:146(A) unequivocally states that "[d]issolution under supervision by the court is a summary proceeding." (Emphasis supplied.) Thus, long before the time of the hearing on the motion for summary judgment (and even before the filing of her initial dilatory exception), both Ms. Judson's original action and Mr. Davis's reconventional demand employed the same mode of procedure, summary procedure, thus rendering Ms. Judson's dilatory exception to the reconventional demand moot.
Finally, even assuming arguendo that the reconventional demand was improperly "cumulated" or otherwise consolidated for trial with the mandamus action, the proper solution would be to order separate trials of the actions. La. C.C.P. arts. 464, 1038; Earhart v. Brown, 97-522, pp. 7-8 (La.App. 5th Cir.10/28/97), 702 So.2d 976, 980.[6] This is precisely what the trial court did following the filing of Ms. Judson's dilatory exception.
Ms. Judson's third assignment of error, whether viewed as based upon improper cumulation, unauthorized use of summary proceeding, or an innominate objection to the reconventional demand, has no merit.

Second and Fourth Assignments of Error: Outstanding Discovery and Denial of Motion to Compel
Louisiana Code of Civil Procedure article 966(C)(1) expressly predicates the granting of a motion for summary judgment upon "adequate discovery" being *1116 accomplished, or a party being at least afforded the opportunity to undertake adequate discovery. But there is no absolute right to delay action on a motion for summary judgment until discovery is completed. Vanderbrook v. Coachmen Industries, Inc., p. 8 (La.App. 1st Cir.5/10/02), 818 So.2d 906, 911. The only requirement regarding discovery in the context of summary judgment is that the parties be given a fair opportunity to present their claims. Id. When a trial court cannot positively determine the diligence of a party in securing evidence through discovery, it should grant a requested continuance. The continuance produces delay, but the denial of the continuance may cause irreparable injury. Matte v. Louisiana Farm Bureau Casualty Insurance Company, 95-1308, pp. 5-6 (La.App. 3rd Cir.6/12/96), 676 So.2d 713, 715.
Despite her outstanding discovery requests, Ms. Judson did not seek to avail herself of the benefit of La. C.C.P. arts. 966(B) and 967(C) by formally requesting additional time or moving for continuance of the summary judgment hearing in order to obtain discovery responses or to submit opposing affidavits demonstrating a genuine issue of material fact. The trial court thus did not err in proceeding to hear the motion for summary judgment.
We next consider the related interlocutory judgment denying Ms. Judson's motion to compel, heard on the same date as the summary judgment hearing. The trial court refused to consider the motion to compel, as it failed to comply with the amicable discovery resolution predicates of Rule 10.1 of the uniform Rules for Louisiana District Courts.[7] Ms. Judson does not dispute the fact that her motion to compel failed to comply with Rule 10.1. Instead, she now employs the obfuscatory tactic of claiming that her motion to compel discovery responses did not involve a "discovery dispute," thus rendering Rule 10.1 inapplicable by its terms. Her asserted logic is that because Mr. Davis failed to timely answer or object to the discovery before her motion was filed, there is no "discovery dispute" to resolve, she is relieved of the necessity of complying with Rule 10.1's predicates, and Mr. Davis must necessarily be ordered to respond to the discovery requests. We find no merit whatsoever in this argument, and no abuse of discretion by the trial court. Rule 10.1 was adopted for the very commendable purposes of promoting amicable resolution of discovery disputes and reducing unnecessary workload on the trial courts, goals which would be effectively thwarted in many cases if Ms. Judson's pedantic interpretation of the rule's language is accepted. We accordingly reject her second assignment of error.

Fifth Assignment of Error: The Temporary Liquidator's Lack of Standing
Ms. Judson also appeals the trial court's interlocutory judgment granting the motions of the temporary liquidator for court approval of certain specific financial and tax transactions and banking arrangements, *1117 the right to demand monthly rental payments for corporate property used by individuals or businesses, and the related right to institute eviction proceedings if necessary.[8] Ms. Judson has previously applied for supervisory writs on this issue directly to the supreme court, attempting to bypass this court. Those writ applications were denied on that issue, but because the supreme court did not consider the issue on its merits, its ruling does not constitute the "law of the case." Judson v. Davis, 03-2896 (La.12/09/03), 860 So.2d 1142. We will therefore address the merits of Ms. Judson's contentions that the trial court's interlocutory judgment granting the motions of the temporary liquidator was erroneous, based upon the temporary liquidator's lack of standing as a "party" to the litigation.
The appointment of the temporary liquidator pursuant to La. R.S. 12:143(E) vested the temporary liquidator with the express powers set forth in La. R.S. 12:146(C), as well as any other powers "as the court in its discretion may grant," including all powers enumerated in La. R.S. 12:145(C), relating to voluntary dissolution out of court.[9] As the temporary liquidator may not exercise any discretionary powers without court order, and he is vested with "all the rights, powers and duties of the officers and board of directors" upon his appointment, La. R.S. 12:141(C), he is the most appropriate (and perhaps the only) person with standing to seek judicial approval of proposed discretionary action. This assignment of error is patently without merit.

Sixth Assignment of Error: Appointment of "Special Master" Without Consent of All Parties
Ms. Judson contends that the trial court's appointment of counsel for the temporary liquidator on April 4, 2003, was improper, as the appointment of a "special master" under La. R.S. 13:4165 requires the consent of all parties and the fixing of reasonable compensation. Her characterization of the temporary liquidator's counsel as a "special master" is based upon an isolated comment of the trial court during the hearing of April 4, 2003. The trial court explained that because the complex nature of corporate and business law required expertise, the counsel would serve as "somewhat of a special master" in order to "assist the temporary liquidator" in complying with the law while fulfilling his duties.
Louisiana Revised Statutes 13:4165 authorizes a trial court to appoint "a special master in any civil action wherein complicated legal or factual issues are presented or wherein exceptional circumstances of the case warrant such appointment." La. R.S. 13:4165(A). The implicit purpose of La. R.S. 13:4165 is to provide assistance to the trial court in its duty of determination of the contested issues.[10]
*1118 It is quite apparent that the trial court did not empower the temporary liquidator's counsel to serve as a "special master" within the meaning of La. R.S. 13:4165. The role of the temporary liquidator's counsel was to serve as advisor and advocate for the temporary liquidator, rather than the trial court itself. As we have previously observed, upon the appointment of the temporary liquidator, the dissolution proceeding commenced. La. R.S. 12:141(B)(2). A liquidator appointed pursuant to La. R.S. 12:143(E), including a temporary liquidator, has "full authority to retain counsel." La. R.S. 12:146(C). We conclude that the trial court's appointment of counsel for the liquidator was made pursuant to its authority granted under La. R.S. 12:146(D), which provides, in pertinent part, that "[t]he court may enter such injunctive and other orders, ex parte or on such notice as the court may prescribe, as it may deem appropriate ...." Here, the trial court expressly concluded that it was necessary and appropriate for the liquidator to have the benefit of experienced, independent counsel, given his fiduciary role and the contentious nature of this litigation. The trial court's ruling in that regard was a considered exercise of its inherent judicial power and the express authority granted it by La. R.S. 12:146(D), and is neither manifestly erroneous nor an abuse of its discretion. This assignment of error has no merit.

First Assignment of Error: Genuine Issue of Material Fact Precluding Summary Judgment
We now arrive at the central issue of this appeal. Mr. Davis moved for summary judgment on his reconventional demand, on the grounds that there was no genuine issue of material fact that the requirements for involuntary dissolution under La. R.S. 12:143(C) were fulfilled. The trial court granted Mr. Davis's motion for summary judgment, ordering involuntary dissolution of Hall's Mortuary, Inc., pursuant to La. R.S. 12:143(C). Louisiana Revised Statutes 12:143 governs involuntary corporate dissolution, and provides in relevant part as follows:
A. The court may entertain a proceeding for involuntary dissolution under its supervision when it is made to appear that:
(1) The corporate assets are insufficient to pay all just demands for which the corporation is liable, or to afford reasonable security to those who may deal with it; or
(2) The objects of the corporation have wholly failed, or are entirely abandoned, or their accomplishment is impracticable; or

*1119 (3) It is beneficial to the interests of the shareholders that the corporation should be liquidated and dissolved; or

(4) The directors are deadlocked in the management of the corporate affairs, and the shareholders are unable to break the deadlock; or
(5) The shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors, but only if irreparable injury to the corporation is being suffered or is threatened by reason thereof, or if irreparable injury to the shareholders is being suffered or is threatened by reason thereof and the court shall determine that such irreparable injury warrants dissolution after giving due regard to the interests of the other shareholders, the employees, and the public; or
(6) The corporation has failed, neglected, or refused, without justifiable cause, to commence business within a period of one year from the date of its incorporation, or, after commencing business, has suspended business for at least one year, and has no real intention of commencing or resuming business; or
(7) The corporation has been guilty of gross and persistent ultra vires acts; or
(8) Judgment has been entered annulling, vacating or forfeiting the corporation's articles and franchise in accordance with the provisions of R.S. 12:163(B); or
(9) (a) A receiver has been appointed under R.S. 12:151 to take charge of the corporation's property, and either (b) there is no reasonable prospect of return of control of the corporation to its shareholders within a reasonable time or (c) the business of the corporation is operating at a loss and there is no reasonable prospect of restoring it to profitable operation within a reasonable time.
B. An involuntary proceeding for dissolution may be instituted against a corporation by either:
(1) A shareholder or shareholders, severally or jointly, who have been registered owners, for a period of not less than six months, of not less than twenty per cent of the entire outstanding shares of the corporation; ...
* * *

C. When a corporation has only two shareholders, each of which owns one-half of the outstanding shares of each class, and those shareholders are engaged in a joint venture solely between themselves and the corporation, then either shareholder may, unless the articles expressly prohibit dissolution pursuant to this Subsection, file a petition stating that it desires to discontinue such joint venture and to dispose of the assets used therein in accordance with a plan to be agreed upon by both shareholders. Such petition, to which shall be attached a copy of the proposed plan of discontinuance and distribution, shall be served on the corporation and on the other shareholder. Unless both shareholders file with the court (1) within three months of the date of last service of such petition, a certificate that they have agreed on such plan, or a modification thereof, and (2) within one year from the date of last service of such petition, a certificate that the distribution provided by such plan has been completed, the court may proceed with involuntary dissolution of such corporation.

* * *
E. The court may, after trial, appoint a judicial liquidator, and may, ex parte pending trial, appoint a temporary liquidator whose authority shall cease *1120 upon appointment of a judicial liquidator, upon dismissal of the petition, or upon appointment of a receiver.
(Emphasis supplied.)
The only identified factual issue which Ms. Judson characterizes as disputed is whether Hall's Mortuary, Inc. was a "joint venture" or a corporation. She disputes this issue on the grounds that Hall's Mortuary, Inc. is a corporation with perpetual existence, and that the factual issue of whether Hall's Mortuary, Inc. is a "joint venture" or a corporation should be determined by a jury as trier of fact. In our view, Ms. Judson misses the true issue here. The actual issue is whether there is any genuine issue of material fact as to the corporation's status as a corporation and "joint venture" for purposes of La. R.S. 12:143(C).
A joint venture has been defined as "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." Coffee Bay Investors, L.L.C. v. W.O.G.C. Company, 03-0406, p. 7 (La.App. 1st Cir.4/2/04), 878 So.2d 665, 670, writ denied, 04-1084 (La.6/25/04), 876 So.2d 838, citing Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 19, 262 So.2d 350, 355 (1972). Generally, the object and the motive behind a joint venture are the anticipated profits derived from a specific business enterprise. See Hayes v. Muller, 245 La. 356, 367, 158 So.2d 191, 195 (1963); Williamson v. Roberts, 103 So.2d 499, 504 (La.App. 2nd Cir.1958). The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. Grand Isle Campsites, 262 La. at 24, 262 So.2d at 357.
There is no genuine issue of material fact as to the corporate status of Hall's Mortuary, Inc.; indeed, the claims of both parties presuppose such status. Contrary to Ms. Judson's contention, the issue of whether the corporation constitutes a "joint venture" within the meaning of La. R.S. 12:143(C) is a legal issue, rather than a factual issue. The use of the term "joint venture" in the statute unfortunately creates confusion, but such ambiguous terminology is readily resolved by consideration of the term's context within a statute addressing the grounds for dissolution of corporations. Thus, for purposes of the statute, we obviously must disregard that portion of the traditional definition of "joint venture" which precludes corporate status.
Mr. Davis, citing Delaware jurisprudence interpreting a near-identical statute, 8 Del. C. § 273, contends that the provision is intended to refer to a close corporation with two shareholders having equal interests, engaged in a common business endeavor having the attributes of a traditional joint venture, but within a corporate framework. In fact, this seems to be the interpretation advanced by the leading treatise on Louisiana corporations law. 8 Glenn G. Morris and Wendell H. Holmes Louisiana Civil Law Treatise: Business Organizations § 40.12 (1st ed.1999). The commentators characterize La. R.S. 12:143(C) as a "special rule" for involuntary dissolution of such a close corporation. The Delaware statute has likewise been held to be "a speedy method of bringing about the dissolution of a joint venture corporation as well as supervision of the distribution of its assets." In re Arthur Treacher's Fish & Chips of Ft. Lauderdale, Inc., 386 A.2d 1162 (Del.Ch.1978).
The Delaware courts have interpreted 8 Del. C. § 273 as "designed to obviate a deadlocked vote of two equal shareholders" of such a corporation, and its prescribed procedure (similar to that of La. R.S.12:143(C)) "serves the purpose of avoiding a requirement of unanimity for *1121 dissolution when there are only two share-holders each holding a half share in a joint venture." In re Data Processing Consultants, Ltd., No. CIV.A. 8907, p. 1, 1987 WL 25360 (Del.Ch.1987) [unpublished opinion]. We conclude that La. R.S. 12:143(C) was intended to serve the same purposes.
In support of his motion for summary judgment, Mr. Davis filed copies of the corporate articles, his proposed plan of liquidation and distribution, relevant pleadings, and his own affidavit of November 17, 2003, verifying the parties' equal ownership interests, the filing of his plan of liquidation and distribution on March 26, 2003, and the lack of agreement of the parties on any plan of distribution or liquidation.
In her sworn affidavit attached to her mandamus petition, Ms. Judson averred that despite her status as shareholder of fifty percent of the corporate stock, Mr. Davis, the shareholder of the other fifty percent, was making unilateral management decisions without the approval of a majority of the corporations board of directors; that she had "effectively been locked out of the management decisions"; and that Mr. Davis "refused to cooperate" in her attempts to participate in the corporation's management. The pleadings, affidavits, and other items of evidence in the record which may properly be considered demonstrate a textbook case of management deadlock for purposes of La. R.S. 12:143(A)(4), the original ground for dissolution alleged in Mr. Davis's reconventional demand.
In light of the foregoing undisputed facts, summary judgment ordering dissolution was proper under both La. R.S. 12:143(C) and 12:143(A)(4). This assignment of error has no merit.

Seventh Assignment of Error: Denial of Due Process and Equal Protection of the Law
Finally, we consider Ms. Judson's contention that the trial court's rendition of summary judgment (and other rulings) have deprived her of due process and equal protection of the law under the United States and Louisiana Constitutions and of the related right to access to the courts under the Louisiana Constitution. These issues were not raised by Ms. Judson in the trial court in either her opposition memorandum or oral argument at the hearing on the motion for summary judgment. Our jurisprudence has a longstanding general rule that issues not submitted to the trial court for decision will not be considered for the first time on appeal, and constitutional issues are no exception. State v. Williams, 02-1030, p. 7 (La.10/15/02), 830 So.2d 984, 988.[11]
Further, these new "constitutional" issues plainly represent a thinly-disguised attempt to resurrect two of the three subsidiary issues this court has already addressed in the context of prior writ application proceedings. As to the third, the implicit denial of Ms. Judson's request for trial by jury by rendition of summary judgment, we would simply point out that there is no constitutional due process right to trial by jury in a civil case in Louisiana. Riddle v. Bickford, 00-2408, p. 4 (La.5/15/01), 785 So.2d 795, 799. And the mere fact that a party has requested *1122 trial by jury does not preclude rendition of summary judgment, as somehow violative of the party's right to access to the courts. See Miles v. Illinois Central Gulf Railroad Company, 389 So.2d 96, 99 (La.App. 4th Cir.), writ denied, 394 So.2d 612 (La.1980).
Based on the foregoing, we pretermit consideration of this overly broad, "catchall" assignment of error. Williams, 02-1030 at p. 7, 830 So.2d at 988. See also Roach v. Eagle Water, Inc., 31,912, pp. 12-13 (La.App. 2nd Cir.5/5/99), 737 So.2d 182, 189.

DECREE
The summary judgment of April 23, 2004, ordering involuntary dissolution of Hall's Mortuary, Inc., and appointing a liquidator and counsel for the liquidator, is affirmed. All costs of this appeal are assessed to the plaintiff-appellant, Nancy Davis Judson.
AFFIRMED. MOTION FOR LEAVE TO PROVIDE EXHIBITS DENIED.
McCLENDON, J., concurs with reasons.
McCLENDON, J., concurs.
For the following reasons, I respectfully concur. The law of the case principle is a discretionary guide. Reargument on the same issue will be barred where there is merely a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where manifest injustice would result. Louisiana Land and Exploration Company v. Verdin, 95-2579, pp. 34 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65. In this particular case, I see no valid reason to re-visit the prior ancillary rulings of this court.
Secondly, while I agree that as a general rule a constitutional claim may not be reviewed by an appellate court unless it was first raised in the court below, exceptions do exist. If justice dictates, a constitutional claim may be considered for the first time on appeal. Unwired Telecom Corp. v. Parish Calcasieu, 03-0732 (La.1/19/05), 903 So.2d 392; see State v. Jackson, 98-0004, p. 5 n. 7 (La.App. 1 Cir. 11/6/98), 724 So.2d 215, 218 n. 7, writ denied, 98-3056 (La.4/1/99), 741 So.2d 1283.
Finally, on the issue of corporate dissolution for closely held corporations, I agree that LSA-R.S. 12:143(A) provides a valid basis for the trial court's ruling for dissolution of the corporation without the need of the joint venture analysis.
NOTES
[1] In her brief on appeal, Ms. Judson contends that the reconventional demand was filed without leave of court, contrary to La. C.C.P. art. 1033. As noted above, this is factually incorrect. And even if it were true, Ms. Judson raises no issue in that regard reviewable in this appeal.
[2] See n. 5, infra.
[3] The courts of appeal "will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice requires otherwise." Uniform Rules of Louisiana Courts of Appeal, Rule 1-3. (Emphasis supplied.)
[4] Ms. Judson tacitly recognized the appropriate objection through her later filing of a dilatory exception asserting that objection, among others, in response to being re-served with the reconventional demand after service on the corporation was requested. We note, however, that the later dilatory exception was properly denied, as the objection of unauthorized use of a summary proceeding was waived by the failure to include it in the original dilatory exception. All objections which may be raised through the dilatory exception are waived unless pleaded therein. La. C.C.P. art. 926(B). Ms. Judson has never disputed that she was properly served with the original reconventional demand. That she was served with the same pleading a second time, either as a courtesy or out of abundance of caution, does not operate to invalidate the original service. As Ms. Judson did not object to the sufficiency of citation or service of process in a declinatory exception filed at the same time as the original dilatory exception, any such possible objection to the original service was waived. La. C.C.P. art. 928(A). Thus, she had no right to assert any dilatory or declinatory exception upon being re-served with the reconventional demand.
[5] In our writ opinion, we held as follows:

WRIT DENIED. There is no cumulation in this matter. Neither Ms. Judson nor Mr. Davis have [sic] multiple actions; each has one action. There being no cumulation, the trial court properly denied the exception raising the objection of improper cumulation. See Johnston v. Bickham, 559 So.2d 15 (La.App. 1 Cir.1990). In addition, we find no error in the trial court's ruling ordering separate trials. See La. C.C.P. art. 1038; and Earhart v. Brown, 97-0522 (La. App. 5 Cir. 10/28/97), 702 So.2d 976.
Judson v. Davis, 2003 CW 1811 (La.App. 1st Cir.9/18/03) [unpublished opinion]. In Johnston, we explained that cumulation refers to the joinder of two or more separate actions by one party, or a set of aligned parties, in one demand against an opposing party or parties. It does not encompass the situation where there are two separate actions made by two separate and opposing parties, each party asserting only one action within his demand. Johnson[Johnston], 559 So.2d at 16.
[6] See n. 5, supra.
[7] Rule 10.1, adopted April 1, 2002, provides as follows:

Before filing any discovery motion, the moving party must attempt to arrange a conference with the opposing party for the purpose of amicably resolving the discovery dispute. The conference may be conducted in person or by telephone. The discovery motion must include a certificate stating:
(a) that the parties have conferred in person or by telephone as required by this rule and the reasons why they were unable to agree; or
(b) that opposing counsel has refused to confer after reasonable notice.
If the court finds that opposing counsel has willfully failed to confer, or failed to confer in good faith, the court may impose sanctions.
[8] She also appeals the related denial of her peremptory exception of no right of action, opposing the temporary liquidator's right to make the motions.
[9] The powers enumerated in La. R.S. 12:145(C) encompass all of the powers sought by the temporary liquidator in his motions.
[10] The appointment of a special master may be made "[p]ursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant." La.R.S. 13:4165(A). In such capacity, the special master "has and shall exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties." La. R.S. 13:4165(B). Such duties may include making "findings of fact or conclusions of law." La. R.S. 13:4165(C)(1). The court must fix "reasonable" compensation of the special master, to be taxed as costs of court. La. R.S. 13:4165(D). As the statute is based upon Rule 53 of the Federal Rules of Civil Procedure, federal jurisprudence interpreting Rule 53 provides useful guidance in interpreting the statute. See Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270, 273 (La. 1986); Bedouin L. Joseph, The Louisiana Special Masters Statute: A Valuable Tool or An Expensive and Unnecessary Diversion?, 51 La.B.J. 261, 262 (2003-2004). Our review of the federal jurisprudence supports our conclusion that while the special master serves as an aide and advisor to the trial court, he is not an advocate or advisor for any party. A special master has been defined as "a public servant engaged in a public function. He is an aide to the court of his appointment. He is not the servant of the litigants, nor the servant of their attorneys." United States v. Conservation Chemical Company, 106 F.R.D. 210, 220 (W.D.Mo. 1985), citing Universal Oil Products Co. v. Hall, 76 F.2d 258, 265 (8th Cir.), cert. denied, 296 U.S. 621, 663, 56 S.Ct. 143, 169, 80 L.Ed. 441 (1928). The special master has "the duties and obligations of a judicial officer." In re Gilbert, 276 U.S. 6, 9, 48 S.Ct. 210, 211, 72 L.Ed. 441 (1928). As an agent of the court, the special master obviously must exercise the same impartiality as the court in the performance of his duties.
[11] As part of her new argument that she has been denied due process, Ms. Judson asserts in her appeal brief that the trial judge to whom this matter was allotted, Judge Free, was deprived of authority to sign an order on February 19, 2003, fixing a motion for protective order for hearing, by reason of her motion to recuse him, filed on January 27, 2003, and not heard until February 20, 2003. This is a correct statement of the law in that regard. La. C.C.P. art. 153; State v. Price, 274 So.2d 194, 197 (La.1973). But as the signing of that order is not an issue raised in this appeal, we need not determine its merit.